Guy A. Graves, J.
The petitioner, pursuant to CPLR article 78 seeks an order annulling respondents’ order dated August 21, 1975, denying his application for a variance from the shoreline setback restrictions of the Adirondack Park Agency Act (hereinafter sometimes referred to as the "act”). (Executive Law, art 27.)
Issue was joined on January 9, 1976 by service of a verified answer containing a counterclaim for injunctive relief against petitioner because of his alleged violation of the act.
The basic underlying facts, except as hereafter set forth are undisputed. The petitioner on or about August 30, 1968 became the owner of a parcel of real property located on the shore of Lake George at Kattskill Bay, in the Town of Fort Ann, County of Washington and State of New York.
The Legislature of the State of New York created the Adirondack Park Act by enacting article 27 of the Executive Law by chapter 348 of the Laws of 1973, effective August 1, *820 1973, whereby the subject property became located within the boundaries of the "Adirondack Park”.
When the property was purchased, there were three small cabins located on the premises. In the fall of 1974, the petitioner began certain site preparations for the construction of a year-round single-family residence on the premises. Two of the three cabins were very close together and were used for sleeping, dining and living purposes. The third cabin which was some three feet from shore and not in issue here was used for sleeping purposes. The petitioner removed the first two cabins from the site where they had been situated (one was destroyed and the other moved to the back portion of the premises to be used as a workshop-storage shed) and, in the spring of 1975, constructed a single-family dwelling in the approximate area where the two cabins had been located (exact location of which is disputed).
In the summer of 1975 after the single-family dwelling had been completed, respondent Adirondack Park Agency (hereinafter referred to as the "agency”) learned about the construction of the dwelling and learned that it did not comply with the so-called 50-foot setback (from the mean high water mark) requirements of the Executive Law (§ 806, subd 1, par a, cl [2]). The petitioner’s land was in a land classification designated as a moderate intensity use area of the park. In accordance with a construction of the shoreline restrictions of the act, the agency decided to consider the petitioner’s dwelling, not as a new building, but an enlargement or rebuilding of a single-family dwelling (the two cabins which were removed being considered as a pre-existing single-family dwelling). Accordingly, pursuant to subdivision 5 of section 811 of the Executive Law the single-family dwelling which was constructed in the spring of 1975 could be as close to the mean high water mark as the two cabins had been.
The agency, through its employees, determined that the new structure was closer to the lake than the pre-existing cabins and that as a consequence it was necessary for the petitioner to obtain a variance from shoreline restrictions pursuant to subdivision 3 of section 806 of the Executive Law. Such an application was made to the agency and was denied without a hearing on August 21, 1975.
The petitioner asserts that the mean high water mark of Lake George was not properly established and that the loca *821 tion of the pre-existing cabins was not accurately ascertained by agency employees.
The record before this court establishes that the petitioner requested a hearing and opportunity to appear before the agency to present his case. However, he was denied such opportunity.
The respondent in its answer to the petition has interposed a counterclaim asserting that the petitioner should be required to remove portions of his residence "which are closer than 33 feet to the mean high water mark of Lake George”.
The petitioner asserts that the agency failed to consider the facts of the situation including practical and unnecessary hardships in complying with any alleged violations, and that ' the agency failed to afford the petitioner his right to a hearing or an opportunity to appear before the agency members and be heard in contravention of the Adirondack Park Agency Act and petitioner’s constitutional rights to due process.
The operative sections of the law read as follows:
"Any person seeking a variance from the strict letter of the shoreline restrictions * * * may make application therefor to the agency. * * * Upon such application, and after public hearing thereon, such local government or the agency as the case may be, shall, where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the restrictions, have authority to vary or modify the application of such restrictions relating to the use, construction or alteration of buildings or structures, or the use of land, so that the spirit of such restrictions shall be observed, public safety and welfare secured and substantial justice done.” (Executive Law, § 806, subd 3; emphasis added.)
The Rules and Regulations of the Adirondack Park Agency (9 NYCRR 582.1 [e]) provide: "The Agency may hold a public hearing on any variance request, and prior to the time that any variance is granted and as soon as practical after receipt of the variance request, it shall hold a public hearing, either at its headquarters in Ray Brook, New York, or within the geographical bounds of the local government where the property is located.” (Emphasis added.)
The agency has taken the position that pursuant to its rules and regulations, the agency may hold a public hearing on any variance request and prior to the time any variance is granted and as soon as practicable after the receipt of the variance *822 request. The agency further contends that this subdivision implements subdivision 3 of section 806 of the Executive Law and that it asserts agency discretion to hold a hearing on any request for a variance from a shoreline restriction, but that, in accord with the statute it implements, it requires a hearing before a variance is granted. It obviously follows from this position that the agency or someone in authority would have to make an initial determination that a variance is to be granted or at least is being favorably considered before the agency will schedule a public hearing on the request. This would, in effect, constitute a two-step process that does not appear in the underlying statute (Executive Law, § 806, subd 3) which appears to mandate a hearing on all variance applications. The converse of the agency’s position would have to be that in all instances where a variance application is to be denied, it can be summarily disposed of without any public hearing requirement or an opportunity to be heard by the applicant. In both instances, it would appear that under the existing rules and regulations, the practical effect would be that the agency would have to make an initial predetermination as to whether it will favorably or unfavorably entertain a variance application. If it is favorably disposed toward a variance, an applicant is accorded a public hearing and an opportunity to be heard; if otherwise, he is relegated to the receipt of a decision of denial on his application for a variance without a public hearing. The justification for the procedure, the agency argues, is that where there is a change contemplated, public participation is deemed necessary and that neither the applicant’s nor the public participation is necessary where the agency denies an application for variance and leaves the restrictions unchanged.
It appears that the petitioner’s residence cost in excess of $90,000, and was constructed in apparent good faith by a local contractor, namely, one Alger Mason who was also a member of the Lake George Park Commission. The Adirondack Park Act does not provide for the obtaining of any preconstruction permit on the basis of the present factual situation. It does, however, provide for a substantial fine or imprisonment or both for any violation of its provision. (See subdivision a of section 813 of the Executive Law.)
The petitioner has shown that the agency, prior to its adverse determination, had not considered the overhang on the pre-existing high mean water mark along the shoreline. *823 The agency’s supporting affidavit states that the mean high water mark of Lake George is very easy to ascertain; however, it fails to set forth the level that was used and how it was determined in denying the variance. The petitioner has affirmatively shown that there has been no official designation of a mean high water mark for Lake George, but rather that the only official designation is that of mean low water mark. (See section 15-a of the Public Lands Law.) (Affidavit of Roy E. Cowan, III, Assistant Hydraulic Engineer for New York State Department of Environmental Conservation at the Lake George outlet dam.)
The respondent agency subsequent to the commencement of this proceeding has submitted the affidavit dated March 15, 1976 of one Earl D. Armstrong, a licensed land surveyor, employed by the New York State Department of Environmental Conservation setting forth that a mean high water mark can be ascertained and determined by the use of certain enumerated State studies on the subject matter. However, no official mean high water mark has been established by the State of New York or by the respondent Park Agency. The respondent through the affidavit of Earl D. Armstrong has also submitted a 1958 aerial survey which substantially shows that the pre-existing cabins were approximately 26 Vi to 28 feet from the shoreline prior to their removal. The agency’s determination in this respect was 33 feet. It is obvious that after an in-depth study and review of this matter by the agency and the Attorney-General’s office and that while this petition has been pending before the court, there have been significant new factors that have arisen, so that the only logical disposition here would be to order a new hearing on the variance application.
In addition to the lack of the necessary factual findings as well as basis upon which such findings could be made, the petitioner has raised serious due process questions concerning his right to a hearing before the agency. Subdivision 3 of section 806 and subdivision 11 of section 809 of the Executive Law specifically provide that the agency hold a public hearing following the filing of an application for a variance from shoreline restrictions. The interpretation by the agency of its own regulation (9 NYCRR 582.1 [e]) to require a hearing only when there is a predetermination to act favorably on such an application, constitutes a denial of due process. The petitioner here is now potentially subject to fine or imprisonment or *824 both without having had an opportunity in the first instance of being heard on his application for a variance.
It has generally been accepted that the power to grant or deny requests for variances, and other relief, may be exercised only after a hearing and that the hearing requirement is mandatory. (See Matter of Buffalo Cremation Co. v March, 249 NY 531; Galvin v Murphy, 11 AD2d 900; Matter of Paris v Eisenberg, 35 Misc 2d 934.)
This Court, accordingly, annuls and sets aside the order of the respondent agency with the direction that the matter be set down for a rehearing in accordance with this determination.